ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| SERVICIOS LEGALES DE PUERTO RICO<br><br>Peticionario<br><br>v.<br><br>UNIÓN DE ABOGADOS Y ABOGADAS DE SERVICIOS LEGALES<br><br>Recurrida | TA2025CE00089 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Número: SJ2024CV00356 y SJ2024CV00377<br><br>Sobre: Impugnación o Confirmación de Laudo |
|---|---|---|

Panel integrado por su presidenta, la Jueza Brignoni Mártir, la Jueza Álvarez Esnard y la Jueza Prats Palerm.

Prats Palerm, Jueza Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 12 de agosto de 2025.

Comparece Servicios Legales de Puerto Rico, Inc. ("SLPR" o "Peticionario") mediante *Solicitud de Certiorari y Revocación de Sentencia* y nos solicita que revoquemos la *Sentencia* notificada el 10 de junio de 2025, por el Tribunal de Primera Instancia, Sala Superior de San Juan ("TPI"). En virtud del referido dictamen, el TPI confirmó el Laudo de Arbitraje emitido por un Árbitro del Negociado de Conciliación y Arbitraje del Departamento del Trabajo y Recursos Humanos de Puerto Rico ("NCA") en el Caso Núm. A-18-1751. El foro de instancia coincidió en que el despido del Lcdo. Aníbal Feliciano Rivera ("Lcdo. Feliciano Rivera") fue injustificado, ya que SLPR no siguió el procedimiento establecido en el Convenio Colectivo. No obstante, modificó el Laudo de Arbitraje, a los efectos de concederle al abogado el pago de los salarios y beneficios dejados de recibir, así como los honorarios de abogado.

Por los fundamentos que proceden, se expide el auto solicitado y se *Confirma* el dictamen recurrido.

## I.

El 18 de diciembre de 2023, el NCA emitió un Laudo de Arbitraje en el caso número A-18-1751. En virtud del referido dictamen, el Árbitro concluyó que el despido del Lcdo. Feliciano Rivera fue injustificado. Razonó que la destitución fue contraria al Artículo 7, Sección 9, (B)(7) del Convenio Colectivo suscrito entre la Unión de Abogados y Abogadas de Servicios Legales ("Unión" o "Recurrida") y SLPR. Detalló que, en lo pertinente, el referido artículo dispone que no se podrá sancionar a un abogado hasta tanto se haya cumplido con el procedimiento correspondiente y exista una decisión final de un Árbitro. Por todo lo cual, ordenó la restitución, sin paga, del Lcdo. Feliciano Rivera.

Insatisfechos, el 17 de enero de 2024, de manera respectiva, SLPR y la Unión instaron solicitudes de revisión de Laudo de Arbitraje ante el TPI. Por estar intrínsicamente relacionados, ambos casos fueron consolidados.

SLPR adujo que el Árbitro erróneamente concluyó que el despido del Lcdo. Feliciano Rivera fue injustificado. De manera particular, relató que, el 4 de diciembre de 2017, advino en conocimiento de que el letrado se había allanado a una Orden de Protección al amparo de la Ley Núm. 54 de 15 de agosto de 1989, según enmendada, conocida como la *Ley para la prevención e intervención con la violencia doméstica*, 8 LPRA secs. 601 *et. seq.* Como resultado de la Orden de Protección, el Lcdo. Feliciano Rivera estaba impedido de acceder al Edificio Cruz Matos en Río Piedras, lugar al que tenía que acudir frecuentemente para cumplir con sus deberes como abogado en la Unidad de Trabajo Comunitario.

Con la intención de evitar su despido, SLPR determinó llegar a un acuerdo con la Unión, el cual le permitiría al Lcdo. Feliciano Rivera continuar laborando en otras áreas, sin violentar la Orden de Protección. No obstante, tras el intercambio de múltiples versiones del acuerdo, el Lcdo. Feliciano Rivera se negó a firmarlo. Ante ello, el 19 de junio de 2018, SLPR tomó la decisión de destituir al Lcdo. Feliciano Rivera, determinación

que fue notificada mediante *Formulación de Cargos*. Además, dispuso que, como empleado de una entidad privada, el abogado no tenía un interés propietario sobre su puesto, por lo que el despido se evaluó a base de criterios de razonabilidad. Así las cosas, sostuvo que procedía revocar el Laudo de Arbitraje.

Por su parte, ese mismo día, mediante una *Petición de Impugnación de Laudo de Arbitraje*, la Unión sostuvo que, a pesar de que el Árbitro correctamente determinó que el despido fue injustificado, no concedió la totalidad del remedio que correspondía. Detalló que, conforme al Artículo 7, Sección 7 (H) del Convenio Colectivo, el Árbitro debía ordenar la reinstalación del Lcdo. Feliciano Rivera con paga retroactiva.

Además, señaló que, en virtud del Artículo 7, Sección (D) las partes habían acordado que las controversias serían resueltas conforme a derecho. Así las cosas, sostuvo que a tenor con la Ley Núm. 402 de 12 de mayo de 1950, según enmendada, conocida como la *Ley que Regula la Concesión de Honorarios de Abogado en los Casos de Reclamaciones de Trabajadores o Empleados contra sus Patronos* ("Ley Núm. 402-1950"), 32 LPRA *et. seq.* secs. 3114, procedía el pago de honorarios de abogado, a razón del quince por ciento (15%) de la cantidad que le corresponde al patrono pagarle al abogado. A raíz de lo anterior, sostuvo que procedía la modificación del Laudo de Arbitraje.

Posteriormente, el 13 de marzo de 2024, la Unión presentó una *Oposición a Petición de Impugnación de Laudo*. En lo aquí pertinente, expuso que no procedía el despido sumario del abogado. Particularizó que, según el Convenio Colectivo, SLPR no podía sancionar al abogado hasta que existiera una determinación final de un Árbitro, excepto bajo circunstancias apremiantes. Añadió que las circunstancias de este caso no podían ser catalogadas como una de las excepciones que justifican la suspensión sumaria.

El 15 de marzo de 2024, SLPR presentó su *Oposición a Solicitud de Revisión de Laudo presentado por la Unión de Abogados y Abogadas de Servicios Legales.* Adujo que, según el lenguaje del Convenio Colectivo, el pago de los beneficios dejados de percibir únicamente procede cuando el Árbitro exonera al abogado de la conducta imputada. Señaló que, en el caso de epígrafe, el Árbitro no exoneró al Lcdo. Feliciano Rivera, sino que, mediante sus determinaciones de hechos, reafirmó la conducta de violencia doméstica incurrida por este.

Con relación a la procedencia de los honorarios de abogados, arguyó que el Convenio Colectivo no reconoce el derecho a su cobro y que las partes tampoco lo pactaron en la sumisión sometida al Árbitro. De manera similar, esbozó que la Ley Núm. 402-1950, *supra,* solamente aplica a procedimientos instados ante los tribunales, no a procedimientos de arbitraje. Así, pues, señaló que no procedía la concesión de los remedios solicitados por la Unión.

Tras varias instancias procesales, el 3 de junio de 2025, el TPI emitió una Sentencia. Mediante el referido dictamen, el foro de instancia declaró *No Ha Lugar* ambas peticiones de revisión y, como resultado, confirmó el Laudo de Arbitraje en su totalidad. No obstante, ese mismo día y por iniciativa propia, dictó una *Orden* en la cual dispuso "[s]e deja sin efecto la Sentencia. Emitiremos nuevo dictamen."[1]

Consecuentemente, el 9 de junio de 2025, notificada al día siguiente, el TPI dictaminó una segunda *Sentencia.* Mediante el nuevo dictamen, el foro de instancia declaró *No Ha Lugar* la petición instada por SLPR y, por el contrario, declaró *Ha Lugar* la solicitud presentada por la Unión. A base de ello, modificó el Laudo de Arbitraje, a los únicos efectos de concederle al Lcdo. Feliciano Rivera el pago de los salarios y beneficios dejados de devengar, así como el pago de los honorarios de abogado a razón del quince por ciento (15%) de la cantidad que SLPR le corresponde satisfacer.

---

[1] Apéndice del recurso, SUMAC, Entrada Núm. 54.

Inconforme, el 7 de julio de 2025, SLPR acudió ante esta Curia mediante *Solicitud de Certiorari y Revocación de Sentencia*. La parte peticionaria realizó los siguientes señalamientos de errores:

**Erró el TPI al confirmar el Laudo de Arbitraje - que revocó la sanción de despido impuesta por el patrono ante la conducta de violencia doméstica del Lcdo. Aníbal Feliciano, que le impedía ejercer como abogado de la Unidad De Trabajo Comunitario de SLPR y, además, modificar el remedio concedido por el Árbitro, para añadirle, paga retroactiva y 15% en honorarios legales a favor de la Unión.**

**En la alternativa, el TPI actuó sin jurisdicción, al dejar sin efecto una Sentencia válidamente emitida y notificada a las partes, para emitir una "segunda" concediendo mayores remedios.**

El 24 de julio de 2025, la Unión instó su *Alegato en Oposición.* Perfeccionado el recurso y contando con el beneficio de la comparecencia de las partes, procedemos a resolver.

## II.

## -A-

El auto de *certiorari* es un vehículo procesal que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior. En esencia, se trata de un recurso extraordinario mediante el cual se solicita al tribunal de superior jerarquía la corrección de un error cometido por el tribunal inferior. *Rivera et als. v. Arcos Dorados,* 212 DPR 124 (2023); *800 Ponce de León Corp. v. American International Insurance*, 205 DPR 163 (2020); *Medina Nazario v. McNeil Healthcare, LLC*, 194 DPR 723, 728-729 (2016); véase, además, Art. 670 del Código de Enjuiciamiento Civil, 32 LPRA sec. 3491. Por tanto, la expedición del auto de *certiorari* descansa en la sana discreción del tribunal revisor. *Íd.; IG Builders et al v. BBVAPR,* 185 DPR 307, 337-338 (2012).

La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, delimita expresamente las instancias en las que este Tribunal de Apelaciones puede expedir los recursos de *certiorari* para revisar resoluciones y órdenes interlocutorias del foro de Instancia. *800 Ponce de León Corp. v. American International Insurance, supra*; *Scotiabank de Puerto Rico v. ZAF*

*Corporation*, 202 DPR 478, 487 (2019). En lo pertinente, la referida regla dispone lo siguiente:

> El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía o en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de certiorari, en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.

> 32 LPRA Ap. V, R. 52.1

Aun cuando al amparo del precitado estatuto adquirimos jurisdicción sobre un recurso de *certiorari*, la expedición del auto y la adjudicación en sus méritos es un asunto discrecional. No obstante, tal discreción no opera en el abstracto. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 96 (2008). La Regla 40 del Reglamento del Tribunal de Apelaciones establece los criterios que este foro tomará en consideración para ejercer prudentemente su discreción para expedir o no un recurso de *certiorari*, a saber:

> A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos son contrarios a derecho.
> B. Si la situación de hechos planteada es la más indicada para analizar el problema.
> C. Si ha mediado prejuicio, parcialidad, o error craso y manifiesto de la apreciación de la prueba por el Tribunal de Primera Instancia.
> D. Si el asunto planteado exige consideración, más detenida a la luz de los autos originales, por los cuales deberán ser elevados, o de alegatos más elaborados.
> E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
> F. Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
> G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA,* 2025 TSPR 42, págs. 59-60, 215 DPR __ (2025).

De otra parte, este Tribunal solo intervendrá con las determinaciones discrecionales del Tribunal de Primera Instancia, cuando se demuestre que hubo un craso abuso de discreción, prejuicio, parcialidad o error manifiesto. *Trans-Oceanic Life Ins. v. Oracle Corp.*, 184 DPR 689, 709 (2012), citando a *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986). En el ámbito jurídico la discreción ha sido definida como una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera. *SLG Zapata-Rivera v. J.F. Montalvo,* 189 DPR 414, 434-435 (2013). La discreción se nutre de un juicio racional apoyado en la razonabilidad y fundamentado en un sentido llano de justicia. *Íd.* Por lo anterior, un adecuado ejercicio de discreción judicial está estrechamente relacionado con el concepto de razonabilidad. *Umpierre Matos v. Juelle Albello*, 203 DPR 254, 275 (2019); *Rivera y otros v. Bco. Popular*, 152 DPR 140, 155 (2000).

-B-

El arbitraje es un método alternativo de solución de disputas, el cual está disponible como una alternativa al litigio tradicional. *Aut. Puertos v. HEO,* 186 DPR 417, 424 (2012). Tal proceso le impone un carácter excluyente al proceso judicial, ya que una cláusula de arbitraje es un contrato que impide a los jueces y tribunales conocer en primera instancia de los conflictos o cuestiones litigiosas sometidas a arbitraje. *Indulac v. Central General de Trabajadores*, 207 DPR 279, 293 (2021).

En el ámbito laboral, el arbitraje surge como parte del proceso de negociación colectiva, cuyo fin es preparar un convenio colectivo. *Indulac v. Central General de Trabajadores, supra*, pág. 294, citando a *Aut. Puertos HEO, supra*, pág. 424. El convenio colectivo es "el acuerdo por escrito entre una organización obrera y un patrono en el que se especifican los términos y condiciones de empleo para los trabajadores cubiertos por el contrato, el estatus de la organización obrera y el procedimiento para

resolver las disputas que surjan durante la vigencia del contrato". *C.O.P.R. v. S.P.U.*, 181 DPR 299, 319 (2011).

Los procedimientos de arbitraje y laudos emitidos en el campo laboral disfrutan de una gran deferencia por parte de los tribunales. *J.R.T. v. Junta Adm. Muelle Mun. de Ponce*, 122 DPR 318, 325 (1941). Cuando se acuerda el uso del arbitraje como mecanismo para ajustar las controversias, se crea un foro sustituto a los tribunales de justicia, cuya interpretación merece nuestra deferencia. *López v. Destilería Serrallés*, 90 DPR 245 (1964); *JRT v. Junta Adm. Muelle Mun. de Ponce, supra*. Nuestro más Alto Foro ha expresado que, aunque la intervención no esté vedada, ante un convenio de arbitraje, lo más prudente es la abstención judicial. *U.C.P.R. v. Triangle Engineering Corp.*, 136 DPR 133, 142 (1994). Sin embargo, la deferencia brindada al procedimiento de arbitraje cede cuando se demuestra la existencia de: (1) fraude; (2) conducta impropia del árbitro; (3) falta del debido proceso de ley; (40 ausencia de jurisdicción; u (5) omisión de resolver todas las cuestiones en disputa o que sea contrario a la política pública. *C.O.P.R. v. S.P.U., supra*, pág. 369.

Por otra parte, si las partes pactan que el laudo arbitral sea conforme a derecho, el árbitro no puede ignorar o dejar pasar por desapercibidas las normas interpretativas, en el campo laboral, de derecho sustantivo emitidas por el Tribunal Supremo de Estados Unidos, y el de Puerto Rico. *JRT v. Hato Rey Psychiatric Hospital,* 119 DPR 62, 68 (1987). Así dispuesto, los tribunales podrán corregir errores jurídicos, en atención al derecho aplicable. *Íd.* En tal supuesto, es la norma que los foros judiciales apelativos tendrán la autoridad para revisar todas las cuestiones de derecho sustantivo resueltas por el árbitro para poder determinar si son correctas. *C.O.P.R. v. S.P.U., supra*, pág. 370. En otras palabras, procede la anulación del laudo solo si no se ha resuelto la controversia conforme a derecho. *Íd.*

**III.**

En el presenta caso, se recurre de una *Sentencia* que confirmó que el despido del Lcdo. Feliciano Rivera fue injustificado. A su vez, modificó el Laudo de Arbitraje, a los efectos de concederle al letrado el pago de los salarios y beneficios dejados de recibir, así como el pago de los honorarios de abogado. De manera particular, el foro de instancia determinó que el despido no estaba justificado, ya que no surgía de la *Formulación de Cargos* que las faltas incurridas fueran causa de despido, conforme exige el Convenio Colectivo.

Mediante el segundo señalamiento de error, SLPR manifiesta que el foro de instancia cometió un error al revocar, *motu proprio*, la primera Sentencia y, posteriormente, conceder mayores remedios mediante una segunda Sentencia. De manera particular, arguye que las Reglas de Procedimiento Civil únicamente permiten al tribunal, por iniciativa propia, corregir errores de forma mediante una enmienda *nunc pro tunc.* Siendo así, la parte peticionaria sostiene que la segunda determinación no es válida, toda vez que el foro de instancia no ostentaba jurisdicción para corregir un error de derecho sustantivo.

Según surge del expediente, el 3 de junio de 2025, el TPI emitió una primera Sentencia. En virtud del referido dictamen, confirmó en su totalidad el laudo de arbitraje. No obstante, ese mismo día, por iniciativa propia, el foro de instancia reconsideró su determinación y, como consecuencia, revocó el aludido dictamen. En su lugar, el 9 de junio de 2025, notificada el día siguiente, dictaminó una segunda Sentencia. Mediante la nueva determinación, el foro de instancia confirmó el Laudo, pero lo modificó a los efectos de concederle al Lcdo. Feliciano Rivera el pago de los salarios y beneficios dejados de percibir. Así, también, ordenó el pago de los honorarios de abogado, a razón del quince por ciento (15%) de la cantidad que a SLPR le corresponde satisfacer.

Aclaramos que nada impide que el foro de instancia, *motu proprio*, reconsidere su propia determinación previo a que la misma advenga final y firme. Siendo así, resolvemos que el primer error no fue cometido.

A través del primer señalamiento de error, el peticionario cuestiona la confirmación del Laudo de Arbitraje y la imposición de remedios mayores a los concedidos por el Árbitro. En específico, arguye que el Lcdo. Feliciano Rivera fue destituido tras:

(1) allanarse a que se expidiera en su contra, una orden de protección por violencia doméstica -Ley 54-1989- tras éste agredir física y emocionalmente a su entonces pareja; (2) que la Orden le impedía acercarse -durante 1 año- a la sede de agencias gubernamentales -donde trabajaba la víctima- y lugar al que comparecía frecuentemente en su función de abogado de SLPR: (3) ocultar ese hecho al patrono, hasta que el patrono de la víctima alertó a SLPR; (4) luego de que en febrero del 2018 se lograra un acuerdo con la unión para que retuviera el empleo, tras comprometerse a cumplir determinadas condiciones; (5) y finalmente Feliciano negarse a firmar la estipulación acordada con la unión, provocando que en junio de ese año, fuese despedido.[2]

Ante ello, arguye que el despido fue justificado, ya que la violencia doméstica figura entre las causales para la suspensión sumaria.

Por su parte, la Unión sostiene que SLPR tomó la decisión de destituir al Lcdo. Feliciano Rivera, sin seguir el procedimiento establecido en el Convenio Colectivo. Asimismo, señala que de la *Formulación de Cargos* no se desprende razón alguna para la suspensión sumaria. Sin embargo, añade que, de haber existido justificación, la suspensión sumaria no podía exceder de cuarenta y cinco (45) días.

En el caso de marras, tanto el Árbitro como el TPI concluyeron que la parte peticionaria no podía destituir al Lcdo. Feliciano Rivera mediante una acción sumaria, sin seguir el procedimiento establecido por el Artículo 7, Sección 9 (B) del Convenio Colectivo. Atinente a la controversia ante nos, el Artículo 7, Sección 9 (B) dispone lo siguiente:

**B. Procedimiento Disciplinario**

1. En todos los casos que puedan conllevar medidas disciplinarias, deberán formularse cargos específicos y notificarse los cargos al(a la) abogado(a) y al(a la) representante designado(a) de la Unión en la oficina, unidad o división pertinente y al(a la) Presidente(a) de la Unión, no más tarde de los setenta (70) días calendario siguientes a la fecha de tener el(la) Director(a) o Coordinador(a), o la(el) Director(a) Ejecutivo(a),

---

[2] Recurso de *certiorari,* pág. 24.

conocimiento oficial de los hechos que dan lugar a los cargos.

2. Todo(a) abogado(a), personalmente o a través de la Unión, tendrá diez (10) días a partir de la fecha de recibo de la notificación de la formulación de cargos, para solicitar la celebración de una vista para la ventilación de los mismos ante un(a) Arbitro del Negociado de Conciliación y Arbitraje del Departamento del Trabajo.

[…]

7. **Ningún(a) abogado(a) podrá ser sancionado(a) en forma alguna hasta que no se haya seguido este procedimiento y haya una decisión final del(de la) Arbitro, excepto según se dispone en el siguiente inciso (Sección 9(B)(8).** No obstante lo anterior, SLPR podrá amonestar a un(a) abogado(a) y éste(a) tendrá derecho a impugnar la amonestación mediante el procedimiento establecido en este Artículo.

8. Acciones Sumarias:

Solamente serán causa para la **<u>suspensión</u>** de empleo y sueldo antes de la celebración de la vista, los cargos por insubordinación crasa, **agresión física**, hostigamiento sexual con circunstancias agravantes, desfalco, hurto o escalamiento al Programa; solicitar dinero a clientes, o cuando haya motivos fundados de que existe un peligro real de destrucción de la propiedad del Programa, o la vida de cualquiera de sus trabajadores(as). También constituirá causa para la suspensión de empleo y sueldo antes de la celebración de la vista cuando exista un patrón de conducta impropia, desordenada o grave, lesiva al buen nombre del Programa. Dicha suspensión sumaria no excederá de cuarenta y cinco (45) días calendario. [...]

9. No obstante lo expresado en este Artículo, cualquier caso de alegada violación que pueda conllevar una destitución o suspensión de empleo, podrá dilucidarse y resolverse de mutuo acuerdo por SLPR, la Unión y el(la) abogado(a) sin necesidad de la celebración de una vista ante el Árbitro.

[…]

11. Solo serán causa de destitución, suspensión, traslado o cualquier medida disciplinaria menos severa, la comisión de las siguientes faltas:

[…]

g. Patrón de conducta impropia y desordenada, o **conducta grave aislada**.[3]

(Énfasis suplido)

Ahora bien, según hemos señalado, SLPR sostiene que la destitución del Lcdo. Feliciano Rivera fue conforme a lo pactado en el Convenio

---

[3] Apéndice del recurso, Entrada Núm. 1, Anejo 1, págs. 27-31.

Colectivo. Añadió que podía despedir al abogado mediante una acción sumaria, toda vez que su conducta constituyó agresión física.

Sobre la aplicación del procedimiento sumario, el foro de instancia resolvió que ninguna de las faltas señaladas por SLPR figuraba entre las excepciones que conllevan la suspensión sumaria, desglosadas en el Artículo 7, Sección 9 (B)(8) del Convenio Colectivo.

Se desprenden de los cargos formulados que el Lcdo. Feliciano Rivera incurrió en violencia doméstica. Indudablemente, la violencia doméstica es una conducta que constituye agresión física. El hecho de que el Lcdo. Feliciano Rivera cometió violencia doméstica nunca ha estado en controversia. Es por tal razón que diferimos del criterio del foro de instancia al determinar que las faltas formuladas por SLPR sí figuran entre las excepciones que permiten la acción sumaria.

No obstante, el aludido artículo claramente dispone que mediante la acción sumaria los abogados únicamente podrán ser suspendidos. En otras palabras, aun cuando existiera una de las excepciones que dispone el Artículo 7, Sección 9 (B)(8) del Convenio Colectivo, el Lcdo. Feliciano Rivera no podía ser despedido sin seguir el procedimiento no sumario establecido.

La violencia doméstica es una conducta repugnante, altamente reprochable. De ninguna manera avalamos la conducta sostenida por el Lcdo. Feliciano Rivera quien, como abogado, tiene el más alto deber de resaltar el nombre de la profesión. Sin embargo, el Convenio Colectivo suscrito entre SLPR y la Unión estableció una serie de salvaguardas que, en esta instancia, no fueron garantizadas.

Resta determinar si procedía la concesión de los salarios y beneficios dejados de devengar, así como los honorarios de abogados. Por su parte, SLPR expresa que bajo el Convenio Colectivo solo procede otorgar los salarios y beneficios dejados de recibir cuando el Árbitro exonera al abogado del cargo formulado. Añade que los honorarios de abogados son improcedentes, ya que la Ley Núm. 402-1950, *supra*, no es de aplicación

en los casos de arbitraje. Particulariza que, en virtud del referido estatuto, los honorarios de abogados solo serán concedidos en los casos instados ante los tribunales.

En relación a los salarios y beneficios dejados de recibir, el Artículo 7, Sección 7 (H) del Convenio Colectivo, establece, en lo pertinente, lo siguiente:

> En los casos disciplinarios, el(la) Árbitro podrá revocar, confirmar o modificar la acción solicitada por SLPR al formular los cargos. Cuando el(la) Árbitro **exonere** al (a la) abogado(a) que ha sido suspendido de empleo y sueldo sumariamente, a tenor con lo dispuesto en la Sección 9(B)(8) de este Artículo, **ordenará su reposición y el pago de todos los haberes dejados de recibir por éste(a), si alguno**.[4]

(Énfasis suplido)

Examinada la disposición correspondiente, concordamos con el foro de instancia al concluir que, conforme al lenguaje utilizado, "exonerar" se refiere a la exoneración de la sanción impuesta al abogado. Por ello, procedía que el Árbitro ordenara el pago de los salarios y beneficios dejados de recibir.

Sobre la imposición de honorarios de abogado, el Artículo 2 de la Ley Núm. 402-1950, 32 LPRA sec. 3115, dispone que:

> En todo caso radicado ante las cortes de Puerto Rico por un trabajador o empleado en que se reclame cualquier derecho o suma de dinero contra su patrono, **al amparo de** la legislación laboral federal o local o **convenio de trabajo de naturaleza individual o colectivo** y en que se conceda la reclamación en todo o en parte, se condenará al patrono al pago de honorarios de abogado [...].

(Énfasis suplido)

Cónsono con lo anterior, somos del criterio que la Ley Núm. 402-1950, *supra*, aplica a los procedimientos de arbitraje incoados al amparo de un convenio colectivo. Siendo así, el foro de instancia no incidió al imponer el pago de honorarios de abogado a razón del quince por ciento (15%) de la cantidad que a SLPR le corresponde satisfacer a favor del Lcdo. Feliciano Rivera.

---

[4] *Íd.*, pág. 25.

Reiteramos que, a pesar de que estamos de acuerdo con la determinación recurrida, no pasamos por desapercibido que la destitución, de su faz, respondió a un incidente de violencia doméstica. Ante ello, reconocemos que SLPR, como entidad que, entre otras, provee asistencia legal a víctimas de violencia doméstica, tenga una preocupación genuina sobre emplear a un individuo quien admitió haber incurrido en tal conducta. No obstante, es evidente que la parte peticionaria no podía imponer una sanción disciplinaria, sin antes seguir el procedimiento acordado en el Convenio Colectivo.

**IV.**

Por los fundamentos que anteceden, se *expide* el auto solicitado y se *Confirma* el dictamen recurrido.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones